| | | |
|---|---|---|
| CHRISTOPHER PRACHT, as Personal Representative of the Estate of Eric F. Lee, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| GREENWOOD MOTOR LINES, INC. d/b/a R+L CARRIERS and R&L TRANSFER, INC. | ) ) ) | |
| Intervenor Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| SAGA FREIGHT LOGISTICS, LLC and TOMAS HERRERA, JR., | ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** comes before the Court on the following: (1) Defendants Saga Freight

Logistics, LLC ("Saga") and Tomas Herrerra, Jr.'s ("Herrera") (collectively, "Defendants")

Motion for Summary Judgment as to Plaintiffs' Claims, Supporting Memoranda, and Exhibits,

(Doc Nos. 75 to 75-17, 89, 90); (2) Intervenor Plaintiff Greenwood Motor Lines, Inc. d/b/a R+L

Carriers and R&L Transfer, Inc.'s ("R&L") Response in Opposition to Defendants' Motion for

Summary Judgment as to Plaintiffs' Claims and Supporting Exhibits, (Doc Nos. 81 to 81-15); (3)

Plaintiff Christopher Pracht's, as Personal Representative of the Estate of Eric F. Lee, ("Pracht")

(collectively with R&L, "Plaintiffs") Response in Opposition to Defendants' Motion for

Summary Judgment as to Plaintiffs' Claims and Supporting Exhibits, (Doc Nos. 83 to 83-34); (4)

R&L's Motion for Summary Judgment as to Saga's Counterclaims, Supporting Memoranda, and

Exhibits, (Doc Nos. 76, 77 to 77-4, 88, 93); (5) Saga's Response in Opposition to R&L's Motion for Summary Judgment and Supporting Exhibits, (Doc. Nos. 80 to 80-4); (6) Saga's Motion for Summary Judgment as to its Counterclaims against R&L, Supporting Memorandum, and Exhibits, (Doc. Nos. 78 to 78-12); (7) R&L's Response in Opposition to Saga's Motion for Summary Judgment as to its Counterclaims and Supporting Exhibits, (Doc. Nos. 82 to 82-6); (8) R&L's Objections to the Magistrate Judge's Order Granting Saga's Motion to Compel, (Doc. No. 72); and (9) Saga's Response in Opposition to R&L's Objections, (Doc. No. 73). The motions have been fully briefed and the issues are ripe for adjudication.

I.      BACKGROUND

This civil action arises out of the accidental death of Eric F. Lee ("Lee"), who tragically passed away after a vehicle accident on Interstate 85 South near Gastonia on October 13, 2011. The record establishes, the parties agree, and/or the parties do not dispute the following. The accident occurred around 1:47 a.m. on October 13, 2011, when a tractor trailer driven by Lee collided with a tractor trailer driven by Herrera. (Doc. Nos. 75-1 at 1, 83 at 2). Herrera was driving a tractor trailer leased and operated by Saga, and Lee was driving a tractor trailer owned and operated by R&L. (Id.). The collision caused an explosion and fire that killed Lee, and Herrera suffered minor injuries. (Id.).

Both trucks were equipped with electronic control modules ("ECM"), or "black boxes," that record information regarding the truck's operation. (Doc. No. 83 at 2). Little information was obtained from Lee's ECM, due to the collision and fire, but information was obtained from Herrera's ECM. (Id.). Through this data, it was established that Herrera was traveling 24.5 miles per hour at the time of the collision. (Doc. Nos. 75-1 at 2, 83 at 3). Although Lee's exact speed is disputed, according to expert testimony from both sides, Lee was traveling in excess of

65 miles per hour. (Doc. Nos. 75-1 at 8–9; 81 at 5–6; 83 at 14). Information from Herrera's

ECM indicates he was in violation of the maximum driving times permitted by the Federal

Motor Carrier Safety Regulations (the "hours of service regulations") at the time of the accident.[1]

(Doc. No. 83-1 at 9–11). Herrera testified in a deposition that his truck's speedometer light was

not operable at the time of the accident, (Doc. No. 83-8 at 3–6), and that he was plugging his

phone into the charger when Lee collided with his truck, (Doc. No. 81-3 at 4).

Pracht, proceeding as Personal Representative of Lee's estate, asserts claims under North

Carolina law for wrongful death and punitive damages against Herrera and Saga. Specifically,

Pracht asserts claims for negligence and punitive damages against Herrera and claims for

negligence; negligent entrustment; negligent hiring, supervision, training, or retention; and

punitive damages against Saga. Pracht contends that Herrera was operating the Saga truck in a

negligent manner which caused Lee to collide with Herrera's vehicle. (Doc. No. 1-1 at 5).

Pracht filed his Complaint in North Carolina Superior Court, Gaston County, on August

15, 2015. (Doc. No. 1-1). Pursuant to Federal diversity jurisdiction, Saga filed its Notice of

Removal and Answer to Plaintiff's Complaint in this Court on September 23, 2013. (Doc. Nos.

1, 3). On November 1, 2013, R&L filed a Motion to Intervene claiming that it sustained

damages due to Defendants' alleged negligence because Lee was operating a truck owned and

operated by R&L at the time of the accident. (Doc. No. 13 at 2). The Court granted R&L's

Motion to Intervene on April 2, 2014, (Doc. No. 31), and R&L filed its Intervenor Complaint

against Saga on April 9, 2014, (Doc. No. 33). On April 28, 2014, Saga filed its Answer to

---

[1] The Federal Motor Carrier Safety Regulations prohibit any property carrying driver from driving more than 11 cumulative hours following 10 consecutive hours of rest. 49 C.F.R. § 395.3. In other words, a driver must rest for 10 consecutive hours, after which he can drive no more than 11 cumulative hours before he must rest again for 10 consecutive hours.

R&L's Complaint along with Counterclaims against R&L for negligence; negligent entrustment; and negligent hiring, supervision, training, or retention. (Doc. No. 36). Saga contends that Lee was contributorily negligent; therefore, Plaintiffs' claims are barred. (Doc. No. 75-1 at 17). Saga also contends that R&L is liable for Lee's negligence under the doctrine of respondeat superior. (Doc. No. 78-1).

After reaching an impasse at mediation, both Saga and R&L filed Cross-Motions for Summary Judgment. Saga filed its Motion for Summary Judgment as to Plaintiffs' claims on May 14, 2015, (Doc. No. 75), and its Motion for Summary Judgment as to its Counterclaims on May 15, 2015, (Doc. No. 78). R&L filed its Motion for Summary Judgment as to Saga's Counterclaims on May 15, 2015. (Doc. No. 76).

## II.   STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id. The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). This "burden on the moving party may be discharged by 'showing'— that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. The nonmoving party may not rely upon mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Id. at 248; accord Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. Anderson, 477 U.S. at 248–49. "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. Id. at 249–50 (citations omitted).

## III.   DISCUSSION

### A. Plaintiffs' Claims Against Defendants

#### 1.   Negligence

Both Pracht and R&L assert claims for negligence against Herrera and Saga. In order to make out a claim for negligence, a plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) and the breach was an actual and proximate cause of the plaintiff's injury. Shook v. Lynch & Howard, P.A., 563 S.E.2d 196, 197 (N.C. Ct. App. 2002). Generally, whether a plaintiff has established the requisite elements of negligence is a matter for the jury. Gibson v. Ussery, 675 S.E.2d 666, 668 (N.C. Ct. App. 2009). Summary

judgment, therefore, is appropriate only if there are no genuine issues of material fact and there is

no evidence supporting one of the elements of negligence.  Shook, 563 S.E.2d at 197.

Plaintiffs have put forth sufficient evidence from which a reasonable jury could return a

verdict for Plaintiffs on their negligence claims.  For example, there is evidence that Herrera was

in violation of the maximum driving hours allowed by the Federal Motor Carrier Safety

Regulations, that he was driving 24.5 miles per hour on the interstate, and that Herrera's truck's

speedometer light was not operable at the time of the accident.  (Doc. Nos. 83-1 at 2–4, 9–11;

83-8 at 3–6).  Herrera also admitted that he was plugging his phone into the charger when Lee

collided with his truck.  (Doc. No. 81-3 at 4).  North Carolina General Statute section 20-141(h)

provides that "[n]o person shall operate a motor vehicle on the highway at such a slow speed as

to impede the normal and reasonable movement of traffic except when reduced speed is

necessary for safe operation or in compliance with law . . . ."  Defendants argue that Herrera did

not violate section 20-141(h) by driving 24.5 miles per hour because there was no minimum

speed limit posted, there were no other vehicles on the highway, and Herrera was not impeding

traffic.  Defendants contend, therefore, that Herrera's slow speed was not negligent.  Section 20-

141(h) does not enumerate a speed which makes its violation negligence per se.  Therefore,

whether Herrera's "speed was unreasonably slow and whether traffic was impeded are questions

of fact to be resolved by a jury." Page v. Tao, 289 S.E.2d 910, 913 (N.C. Ct. App.), aff'd, 295

S.E.2d 470 (N.C. 1982).  Consequently, the Court finds there is sufficient evidence of negligence

on the part of Herrera to establish a genuine issue for trial.

Defendants further argue that Lee was negligent; therefore, Plaintiffs' negligence claims

are barred by Lee's contributory negligence.  In order to prove a plaintiff's contributory

negligence, the defendant must show (1) that the plaintiff failed to act with due care and (2) that

such failure proximately caused the injury.  Thorpe v. TJM Ocean Isle Partners LLC, 733 S.E.2d 185, 190 (N.C. Ct. App. 2012).  As an affirmative defense, Defendants have the burden to prove there is sufficient evidence supporting each element.  Hoffman v. Oakley, 647 S.E.2d 117, 122 (N.C. Ct. App. 2007).

Defendants devote much argument to Lee's alleged contributory negligence.  Defendants cite expert testimony that Lee would have been able to see Herrera's truck approximately 1,000 feet before impact and that Lee should have been able to avoid the accident.  (Doc. No. 75-1 at 5, 7–9).  There is also substantial evidence that Lee was speeding at the time of the accident.  (Doc. Nos. 75-1 at 8–9; 81 at 5–6; 83 at 14).  Plaintiffs counter with expert testimony that Lee could not have avoided the accident.  (Doc. No. 83 at 12–14).

At the summary judgment stage, the Court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.  The operation of a motor vehicle in excess of the applicable speed limits set forth in North Carolina General Statute section 20-141(a) is negligence per se.  Price v. Miller, 157 S.E.2d 347, 350 (N.C. 1967).  Although Lee's speeding was negligence per se, Defendants must also positively prove that Lee's speeding was a proximate cause of the accident.  Whether such negligence is a proximate cause is ordinarily a question for the jury. Norfleet v. Hall, 169 S.E. 143, 145 (N.C. 1933).  Furthermore at this point, the evidence on both sides "sets up a battle of the experts, which should not be resolved at summary judgment." Reyazuddin v. Montgomery Cnty., Maryland, 789 F.3d 407, 417 (4th Cir. 2015).  A reasonable jury could find that Lee's speeding was not a proximate cause of the accident or that Lee could not have avoided the accident, and therefore, the Court finds that a genuine issue for trial exists as to Defendants' affirmative defense of contributory negligence.  Consequently, Defendants'

Motion for Summary Judgment is denied as to Plaintiffs' claims for negligence.

    2.  Gross Negligence and Punitive Damages

    Both Pracht and R&L contend that Herrera was grossly negligent so as to overcome any alleged contributory negligence on the part of Lee.  Furthermore, Pracht asserts a claim for punitive damages against Herrera and Saga.  "Contributory negligence is not a bar to a plaintiff's recovery when the defendant's gross negligence, or willful or wanton conduct, is a proximate cause of the plaintiff's injuries."  Yancey v. Lea, 550 S.E.2d 155, 157 (N.C. 2001).  The North Carolina Supreme Court has "defined 'gross negligence' as 'wanton conduct done with conscious or reckless disregard for the rights and safety of others.'"  Id. (quoting Bullins v. Schmidt, 369 S.E.2d 601, 603 (N.C. 1988)).  It has also explained than "[a]n act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others."  Id. (quoting Foster v. Hyman, 148 S.E. 36, 37–38 (N.C. 1929)).  There is a substantial difference between ordinary negligence and gross negligence.  Id. at 158.  A defendant's "act or conduct rises to the level of gross negligence when the act is done purposely and with knowledge that such act is a breach of duty to others."  Id. (emphasis omitted).

    Punitive damages may be awarded in this case only if Pracht proves by clear and convincing evidence that Herrera is liable for compensatory damages and that his conduct was willful and wanton.  N.C. Gen. Stat. § 1D-15(a)–(b).  Punitive damages may not be awarded against a corporation unless "the officers, directors, or managers of the corporation participated in or condoned" the willful or wanton conduct.  N.C. Gen. Stat. § 1D-15(c).  North Carolina statute provides that "willful or wanton conduct" is more than gross negligence, and it defines such conduct as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in

injury, damage, or other harm." N.C. Gen. Stat. § 1D-5(7).

A careful review of the record reveals that Defendants are not entitled to summary judgment as to gross negligence or on Pracht's punitive damages claim. Herrera was aware of the applicable Federal regulations which limit the cumulative hours a commercial driver may drive before he must stop for a mandatory rest period. (Doc. Nos. 75-1 at 14; 75-14). The evidence clearly shows, and Defendants do not dispute, that in the three days leading up to the accident as well as the day of the accident, Herrera violated the regulations by driving in excess of the maximum hours permitted. (Doc. No. 83 at 2–3). Herrera testified in a deposition that he was trained on the Texas Commercial Motor Vehicle Manual. (Doc. No. 83-8 at 20–21). That manual warns drivers of the dangers of driving while fatigued and indicates that fatigued driving is a major cause of fatal accidents. (Doc. No. 83-12 at 2–3). A representative for Saga also testified that a professional driver should know that violating the hours of service requirements increases the chances of fatigue and driving while fatigued endangers other drivers. (Doc. No. 83-20 at 26–27). Herrera admits that he could not see how fast he was driving because his truck's speedometer light was not operating, and he testified that he was uncomfortable driving at night without the ability to see his speedometer. (Doc. No. 83-8 at 5–7). It is established that Herrera was driving 24.5 miles per hour, and Herrera admitted that it was unsafe and hazardous to drive below 40 miles per hour on an interstate. (Doc. No. 83-8 at 14–15, 18). Herrera also admitted that he was plugging his phone in when the collision occurred. (Doc. No. 81-3 at 4).

Pracht cites Snow v. Oneill, No. 1:04CV681, 2006 WL 1837910, at *3 (M.D.N.C. June 5, 2006), and Cloaninger v. Wheeler, No. 5:05CV286-RLV, 2006 WL 3782702, at *6 (W.D.N.C. Dec. 22, 2006), to support his argument that his gross negligence and punitive damages claims should go to the jury. In both of those cases, which involved vehicle accidents with analogous

factual allegations, each court denied the defendant's motion for summary judgment on the

plaintiff's gross negligence and punitive damages claims because questions of fact existed as to

whether the defendant driver acted willfully and wantonly.  Id.  This Court finds these cases

persuasive.

Defendants counter that Herrera did not appreciate that he was fatigued or that he could

be a hazard.  Herrera believed he was alone on the interstate, and he did not know that Lee was

approaching.  Defendants also aver that Plaintiffs have not put forward any evidence to the

contrary.  Therefore, Defendants argue there is no evidence that Herrera consciously or

intentionally disregarded the rights and safety of others.  Defendants cite several out-of-state

cases with similar facts that held there was insufficient proof to support an award of punitive

damages against a driver because the driver did not have a conscious realization or actual

knowledge that his conduct was likely to result in serious harm to another.  See Purnick v. C.R.

England, Inc., 269 F.3d 851, 852–53 (7th Cir. 2001); Burke v. Maassen, 904 F.2d 178, 183 (3d

Cir. 1990); Boomsma v. Star Transp., Inc., 202 F. Supp. 2d 869, 881 (E.D. Wis. 2002).  These

cases, however, are unpersuasive because they are premised upon state laws which require the

defendant to possess actual, conscious knowledge that his conduct was likely to result in injury.[2]

Under North Carolina law, a plaintiff is entitled to punitive damages if the defendant knew or

should have known that his conduct was reasonably likely to result in injury.  N.C. Gen. Stat. §

1D-5(7).

---

[2] The court in Burke v. Maasen determined that there was inadequate proof to support a punitive
damages claim because the defendant did not consciously appreciate the risk.  However, the
court opined that the defendant's knowledge may have been proven by an admission that he
knew the Federal regulations limiting driving time were designed to prevent fatigue and
accidents or by evidence that the defendant had been told that if he drove over the limit he might
fall asleep and cause an accident.  904 F.2d at 183 n.5.

Viewed in the light most favorable to Pracht, there is sufficient evidence from which a reasonable jury could conclude that Herrera was guilty of gross negligence, i.e., acting recklessly, and also that he acted with conscious and intentional disregard of or indifference to the rights and safety of others and that he knew or should have known of the reasonable likelihood that his actions would cause injury, i.e., willfully and wantonly. Therefore, there is a genuine issue of material fact for trial, and Defendants' request for summary judgment is denied as to Pracht's gross negligence and punitive damages claim against Herrera.

Similarly, Pracht has put forward sufficient evidence to support a finding of gross negligence and punitive damages against Saga. Saga testified through its representative that it was common knowledge that drivers regularly violated the hours of service regulations and falsified their logs in order to drive more miles. (Doc. No. 83-20 at 17–18). In the ten months before this accident, Saga drivers received 37 hours of service violations, which were reported directly to Saga. (Doc. No. 83 at 10). Saga also understood that the Federal regulations were based upon studies regarding driver fatigue and that driving while fatigued increased the danger to the motoring public. (Id. at 22–23, 25–27). Saga testified that it uses a computer program to determine the miles and the hours it would take to drive from one point to another, (Doc. No. 90-1 at 4), and that Herrera "would typically call" into Saga dispatch when his trailer was being loaded or unloaded, (Doc. No. 83-20 at 34). When Herrera completed a trip, he would turn in his daily logs, trip receipts, et cetera to Saga. (Id.). The speedometer light in Herrera's truck had been inoperable since Herrera began driving the truck 42 days before the accident. (Doc. No. 83-8 at 3).

Pracht cites Cloaninger v. Wheeler, in which the court denied summary judgment on the plaintiff's punitive damage claim because questions of material fact existed as to the defendant

trucking company's knowledge and implementation of safety measures as well as the trucking company's knowledge of the condition of its vehicles. 2006 WL 3782702, at *7. Pracht argues that Saga had access to information and documents that could have revealed Herrera's repeated disregard for the hours of service regulations. If Saga had adequate safety procedures in place, it could have easily discovered, well before the crash, that Herrera falsified his hours of service logs, that he had violated the hours of service requirements on the subject trip, and that the speedometer in Herrera's truck was unusable at night.

Saga counters that it does not have the capacity to download ECM data from its trucks, it is not required by any regulation to have that capacity, and no one in this case would have possessed the ECM data from Herrera's truck but for it being downloaded after the accident. Two days before the accident, Saga received a "satisfactory" rating from the Federal Motor Carrier Safety Administration indicating that Saga had adequate safety management and controls in place. (Doc. No. 75-1 at 16–17). Saga's internal policy is to review driver logs when they are turned in, but Saga does not conduct an audit, comparing receipts to log entries, until a driver reaches the end of his 90-day probation period. Herrera had only been driving for Saga for 42 days, so he was still within the probationary period. Furthermore, the logs and receipts from Herrera's trip that ended in the subject accident were still in Herrera's possession at the time of the accident, so Saga was incapable of reviewing those logs. Because Herrera had only been driving for Saga 42 days at the time of the accident, and because there had been no indications to Saga of any performance issues with Herrera, Saga had not audited Herrera's logs and had no reason to conduct an audit before the 90-day period had elapsed. Finally, the evidence shows that on the date of the accident no mechanical problems with Herrera's tractor trailer had been documented or reported to Saga. Specifically, Herrera had not reported to Saga that the

speedometer light was not operating. Saga argues that it was not aware that there were any

issues with Herrera's truck, and it was not aware that there were any issues with Herrera's logs

or that Herrera was in violation of any regulations. Saga concludes that, because Pracht has

failed to establish that Saga was positively aware of these issues, he cannot establish gross

negligence by Saga or his punitive damages claim against Saga. Therefore, Saga argues it is

entitled to summary judgement.[3]

The Court finds, however, that Pracht has sufficiently demonstrated that questions of

material fact exist as to whether Saga knew or should have known about Herrera's hours of

service violations, whether Saga condoned Herrera's conduct by failing to ensure compliance

with the regulations, and whether Saga participated in or condoned Herrera's conduct by failing

to adequately inspect and maintain his truck. Therefore, Defendants' Motion for Summary

Judgment as to Pracht's claims for gross negligence and punitive damages against Saga must be

denied.

3. Negligent Hiring, Supervision, Training, or Retention

Pracht and R&L each assert claims for negligent hiring, supervision, training, or retention

against Saga. These claims provide Plaintiffs an alternate theory upon which they may seek to

impose liability upon Saga for Herrera's conduct. Hogan v. Forsyth Country Club Co., 340

S.E.2d 116, 124 (N.C. Ct. App. 1986); see also McFadyen v. Duke Univ., 786 F. Supp. 2d 887,

1002 (M.D.N.C. 2011), aff'd in part, rev'd in part, dismissed in part sub nom. Evans v. Chalmers,

---

[3] The Court notes that Saga makes the exact opposite argument in its Response in Opposition to
R&L's Motion for Summary Judgment. (Doc. No. 80 at 5). In that brief, Saga argues that,
because Lee turned in his logs on a daily basis and R&L had Lee's prior logs, R&L would have
known whether Lee was driving in excess of the hours of service regulations or without adequate
rest. Therefore, if Lee was driving in excess of the hours of service regulations and R&L
dispatched him anyway, R&L is liable for negligent entrustment. (Id.).

703 F.3d 636 (4th Cir. 2012). The application of a theory of independent negligence in hiring, training, supervising, or retaining an employee is important in cases where the employee's acts were not within the scope of his or her employment. Hogan, 340 S.E.2d at 124. In such a case, this theory allows a plaintiff to establish liability on the part of the employer where no liability would otherwise exist. Id. In other words, these claims arise when an employee is acting outside the scope of employment, and they may only be asserted as an alternative to respondeat superior liability. Brown v. Tethys Bioscience, Inc., No. CIV.A. 1:10-1245, 2012 WL 4605671, at *6 n.4 (S.D. W. Va. Oct. 1, 2012).

Saga has admitted that Herrera was acting within the course and scope of his employment with Saga at the time of the accident. (Doc. Nos. 3 ¶9; 36 ¶13; 62 ¶13). Therefore, Saga is vicariously liable for Herrera's conduct pursuant to the doctrine of respondeat superior. Parker v. Erixon, 473 S.E.2d 421, 426 (N.C. Ct. App. 1996). Because Saga is liable via respondeat superior, Plaintiffs' claims for negligent hiring, supervision, training, or retention against Saga cannot proceed. Therefore, Saga's Motion for Summary Judgment is granted as to both Pracht's and R&L's claims for negligent hiring, supervision, training, or retention.

4. Negligent Entrustment

A negligent entrustment claim is also an alternate theory upon which Plaintiffs may seek to impose liability upon Saga for Herrera's conduct. Similar to the other direct negligence claims against Saga, however, a claim for "[n]egligent entrustment is applicable only when the plaintiff undertakes to impose liability on an owner not otherwise responsible for the conduct of the driver of the vehicle." Frugard v. Pritchard, 434 S.E.2d 620, 624 (N.C. Ct. App. 1993), rev'd on other grounds, 450 S.E.2d 744 (N.C. 1994) (citing Heath v. Kirkman, 82 S.E.2d 104, 107 (N.C. 1954)). "If the allegations of a complaint are based both on the doctrine of respondeat superior

and negligent entrustment and the agency relationship is admitted, the liability of the defendant employer would rest on the doctrine of respondeat superior only and the negligent entrustment allegation would become irrelevant and prejudicial." Id. The only exception to this rule is "where the issue of negligent entrustment [is] relevant in a claim for punitive damages based on the willful and wanton entrustment of a vehicle to a person likely to endanger the safety of others." Id. (citing Plummer v. Henry, 171 S.E.2d 330, 332–35 (N.C. Ct. App. 1969)).

Saga has admitted an agency relationship with Herrera, (Doc. Nos. 3 ¶9; 36 ¶13; 62 ¶13), and R&L has not asserted a claim for punitive damages against Saga. Therefore, R&L's negligent entrustment claim against Saga is irrelevant and prejudicial, and the Court grants Saga's Motion for Summary Judgment as to R&L's negligent entrustment claim.

On the other hand, Pracht has asserted a claim for punitive damages against Saga. Having denied Saga summary judgment as to Pracht's punitive damages claim against it, the exception to the rule applies, and Pracht's claim against Saga for negligent entrustment may go forward.

Negligent entrustment is established "when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver who is likely to cause injury to others in its use." Swicegood v. Cooper, 459 S.E.2d 206, 207 (N.C. 1995) (citations omitted). As discussed above, Pracht has set forth sufficient evidence to establish a question of material fact regarding whether Saga should have known that Herrera was violating the hours of service regulations. Furthermore, Saga admits that a motor carrier that dispatches a driver who it knows is in violation of the hours of service regulations has committed negligent entrustment. (Doc. No. 80 at 5). Therefore, Saga's Motion for Summary Judgment as to Pracht's negligent entrustment claim is denied.

**B. Saga's Counterclaims against R&L**

    1. <u>Saga's Negligence Counterclaim</u>

Saga has asserted Counterclaims against R&L alleging that R&L is vicariously liable for

Lee's negligence in causing the accident at issue.[4]  Saga argues that Lee owed a duty to maintain

a lookout and that Lee was speeding at the time of the accident.  R&L counters that Herrera was

contributorily negligent; therefore, Saga's negligence counterclaim is barred.  Saga responds that

Lee should have seen Herrera's truck and could have avoided the accident, and therefore, Lee

had the last clear chance to avoid the accident.

There is substantial evidence that Lee was speeding at the time of the accident.  There is

also substantial evidence of negligence by Herrera as well as expert reports and testimony on

both sides regarding the causes of the accident and whether Lee could have avoided the accident.

Although Lee's speeding constitutes negligence <u>per se</u>, it must also be shown that Lee's speeding

was a proximate cause of the accident, which is a question for the jury.  <u>Norfleet</u>, 169 S.E. at

145.  Similarly, the evidence regarding Herrera's negligence and whether Lee had the last clear

chance to avoid the accident "sets up a battle of the experts, which should not be resolved at

summary judgment."  <u>Reyazuddin</u>, 789 F.3d at 417.  Therefore, disputes of material fact exist,

and Saga's counterclaim for negligence against R&L shall go forward to trial.

    2. <u>Saga's Counterclaims for Negligent Hiring, Supervision, Training, or Retention and Negligent Entrustment</u>

Saga also asserts counterclaims for negligent hiring, supervision, training, or retention

and negligent entrustment against R&L.  As discussed above, these claims are alternate theories

upon which Saga may seek to impose liability upon R&L for Lee's conduct.  <u>Frugard</u>, 434

---

[4] In its Answer to R&L's Complaint, Saga also asserted a defense of failure to mitigate damages. (Doc. No. 62 at 6).  However, Saga subsequently acknowledged that this defense was not supported by the evidence, and it has withdrawn the defense.  (Doc. No. 80 at 4).

S.E.2d at 624; Hogan, 340 S.E.2d at 124. These claims may only be asserted as alternates to respondeat superior liability. Brown, 2012 WL 4605671, at *6 n.4. R&L admits that Lee was acting in the course and scope of his employment with R&L at the time of the accident. (Doc. No. 77 at 6). Therefore, R&L is vicariously liable for Lee's conduct under the doctrine of respondeat superior. Parker, 473 S.E.2d at 426. Consequently, Saga's claims for negligent hiring, supervision, training, or retention and negligent entrustment against R&L cannot proceed.

**C. R&L's Objections to the Magistrate Judge's Order Granting Saga's Motion to Compel**

The Court has reviewed the Magistrate Judge's Order Granting Saga's Motion to Compel, (Doc. No. 70), as well as the record, motions, and briefs regarding the Order and Saga's Motion to Compel. Having done so, the Court finds that the Order is not clearly erroneous or contrary to law and that no mistake was committed. Fed. R. Civ. P. 72(a); Performance Sales & Mktg. LLC v. Lowe's Companies, Inc., No. 5:07-CV-00140-RLV, 2012 WL 4061680, at *3 (W.D.N.C. Sept. 14, 2012). Therefore, the Court affirms the Magistrate Judge's Order and overrules R&L's objections.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendants' Motion for Summary Judgment as to Plaintiffs' Claims, (Doc No. 75), is **GRANTED in part** and **DENIED in part**. Specifically, Pracht's claims for negligent hiring, supervision, training, or retention against Saga is **DISMISSED**. Pracht's claims for negligence against Herrera, negligence against Saga, negligent entrustment against Saga, punitive damages against Herrera, and punitive damages against Saga may proceed to trial. R&L's claims for negligent hiring, supervision, training, or retention against Saga and negligent entrustment against Saga are

**DISMISSED**.  R&L's claims for negligence against Herrera and negligence against Saga may proceed to trial.

2.  R&L's Motion for Summary Judgment as to Saga's Counterclaims, (Doc No. 76), is **GRANTED in part** and **DENIED in part**.  Specifically, Saga's counterclaims for negligent hiring, supervision, training, or retention against R&L and negligent entrustment against R&L are **DISMISSED**.  Saga's counterclaim for negligence against R&L may proceed to trial.

3.  Saga's Motion for Summary Judgment as to its Counterclaims against R&L, (Doc. No. 78), is **DENIED**.

4.  The Magistrate Judge's Order, (Doc. No. 70), is **AFFIRMED**.  Pursuant to that Order, if R&L has not already done so, it is **ORDERED** to provide Saga with a full and complete response to Request for Production No. 21.

5.  R&L's Objection to the Magistrate Judge's Order Granting Saga's Motion to Compel, (Doc. No. 72), is **DENIED**.

Signed: October 9, 2015

Robert J. Conrad, Jr.
United States District Judge
